## EDW. W. SIMPSON v. ORLANDO F. SERVISS, AUDITOR, ET AL.

**1. LIEN FROM DOW LAW TAXES.**

The lien for the assessments and penalties prescribed by the act entitled "An act providing against the evils resulting from the traffic in intoxicating liquors," passed May 14, 1886 (83 Ohio L., 157), attaches to the real property on and in which the business of such traffic is conducted by a lessee, although the lease forbids sales on the premises, and the same is so conducted without the knowledge or consent of the lessor or owner of the premises, and in violation of the conditions of the lease, and this lien includes also an increased assessment from enlarging the business by sales other than that for which the license was issued.

**2. SINGLE SALE CALLS FOR THE INCREASED TAX.**

Where a person, having made return that his business is confined exclusively to malt or vinous liquors, or both, thereafter, during the assessment year, makes a single sale of any other intoxicating liquors, the assessment upon his business is thereby increased as provided by section five of said act.

**3. INCREASED ASSESSMENT SUBJECT TO REFUNDER.**

Such additional or increase assessment becomes by force of said act a part of the original assessment, and is due in ten days after the same is placed upon the duplicate; and is subject to penalty and refunder in like manner as is provided for original assessments, but such penalty is not the subject of refunder.

ERROR to the Court of Common Pleas of Clark county.

SHEARER, J.

The question presented by this record is whether the court below erred in sustaining the demurrer to the petition.

---

* This case was cited by the superior court in Root v. Meader, 2 Ohio Dec., 547. See decisions of circuit court in Kennedy v. Thompson *post*, 254. and in Smock v. Brouse, 5 Ohio Circ. Dec., 294.

For cause of action the plaintiff states that he is the owner of certain specified real estate in the city of Springfield; that the defendants, Serviss and Parsons, are respectively the auditor and treasurer of this county.

That on the 20th day of June, 1887, the plaintiff leased to one Eby a portion of said premises, to be used as a boarding house, upon the express condition that no intoxicating liquors should be sold therein; that said Eby used and occupied said premises in accordance with the terms of said lease until October 1, 1887, when he entered into partnership with one Lobeck, and thereafter continued the business under the firm name of Lobeck & Eby.

That on the first day of November, 1887, said Lobeck, without the knowledge or consent of the plaintiff, and against his express direction and command, filed in the office of said auditor a return to conduct the business of trafficking in malt and vinous liquors upon said premises.

That said auditor placed upon the assessment duplicate for traffic in intoxicating liquors, the amount of $56.30, for the sale of malt and vinous liquors, that sum being the proportion for the remainder of the assessment year; of which $6.30 has been paid, and the residue ($50.00) remains upon said duplicate, charged as due December 20, 1887.

That upon the fifth day of December, 1887, said Eby satisfied said auditor by proof, to him sufficient, that said business had been discontinued on the second day of said month.

That, in addition to said assessment of $56.30, said auditor has placed upon said liquor traffic duplicate an additional and increased assessment in the sum of two hundred and fifty dollars; that the records do not disclose the facts upon which the latter assessment is based; but the plaintiff is informed by said auditor, that he had information to him satisfactory, but of which plaintiff has no knowledge, that said Lobeck on said December 2, sold, to certain parties named, a half-pint of whisky and one drink of the same liquor; and thereupon said increased assessment of two hundred and fifty dollars was by him placed upon the liquor traffic duplicate.

That said auditor notified the plaintiff that unless said sum of fifty dollars, together with said increased assessment of two hundred and fifty dollars, so placed upon said duplicate, is paid at once, he will proceed to place the same upon the general real estate duplicate of the city, with a penalty of twenty per cent. and costs of collection, and will place said duplicate in the hands of said treasurer for collection as other taxes; said treasurer having made return that said assessment, etc., cannot be collected from said Lobeck & Eby.

That plaintiff had no knowledge that said Lobeck & Eby intended to or did engage in such traffic; that in his lease to them he had provided that no intoxicating liquor should be sold on the demised premises; that he did not know, nor could he ascertain, that liquors were being sold there, although he made frequent inquiry and diligent inspection of the premises; that there was no saloon or barroom, nor the usual appliances for such business; nor any visible indication that the same was being carried on; and that said premises were not adapted to said business; that said tenants concealed from him the fact that they were selling liquor; and that when he learned that vinous and malt liquors were sold there, he demanded of said tenants that said traffic should, and it did, cease.

It is further alleged that the plaintiff has demanded of the auditor that he make a proportionate reduction from said assessment of fifty dollars, and from said increased assessment of two hundred and fifty dollars, for the fraction of the year in which said parties were not engaged in said business, and that he should remit the penalty of twenty per cent. upon the payment of the amount so reduced.

That said auditor refuses to accede to said demand, although proper tender has been made.

It is alleged, that by reason of the premises, said assessments are illegal and void; that unless restrained, said auditor will place said assessments, etc., upon

the general duplicate, and said treasurer will collect the same. That the placing of said assessments upon said duplicate will cast a cloud upon the plaintiff's title, to his great and irreparable injury; and prays for a perpetual injunction, etc.

The principle questions raised by the demurrer, and argued by counsel, are:

I. Whether the lien for the assessment and penalty, prescribed by the statute, commonly called the Dow law (83 O. L. 157), attaches to the real estate where intoxicating liquors are sold without the knowledge or consent of the owner, and in violation of the prohibitory conditions of the lease under which the seller holds possession.

II. Whether a single sale of spirituous liquors by a person who has made return that his business is confined exclusively to the sale of malt or vinous liquors, or both, is within the provisions of section five of said act, and subjects the seller to an increased assessment upon his business, as therein provided.

III. If said increased assessment does attach as such lien, as of what date does it operate; and is it the subject of the refunder provided for original assessments; and in making refunder, is cognizance to be taken of the penalty provided by statute?

In construing this statute, the mischief sought to be remedied, as indicated by the title, must be kept in view; and the old law must be considered.

First—The act of 1854 (S. & C. 1431) made it an offense, punishable by fine and imprisonment, to sell intoxicating liquors to be drank upon the premises where sold. Thirty years' experience demonstrated that that law was inadequate to prevent the evils resulting from the traffic in intoxicating liquors; so, in 1883, a new policy was adopted. The first section of the old act was repealed, and the so-called Scott law enacted. This placed the traffic, with certain exceptions, in the category of lawful business, but, in order to prevent the evils resulting therefrom, imposed upon that business a tax, to be paid by any one engaging therein. The Dow law is of the same character, enacted after the Scott law was declared unconstitutional. Thus a tax law was substituted for a penal enactment. Ordinarily tax laws are to have liberal construction; but in such interpretation, as we have already said, the object of the enactment—the intention of the legislature as gathered from the old law, the mischief and the remedy sought to be applied—must not be lost sight of.

In determining, therefore, the question presented in this record, we must consider whether the intention of the legislature will best be accomplished under the interpretation claimed by the plaintiff in error, or by the construction contended for by the defendant in error. The claims of both parties are sufficiently indicated by the petition.

The first section of the act under consideration provides that there shall be assessed yearly, upon the business of trafficking in spirituous, vinous, malt or any intoxicating liquors, and paid into the county treasury by every person engaged therein, and for each place where such business is carried on by or for such person, the sum of two hundred dollars; provided, if the business through the entire year is confined to the traffic in malt or vinous liquors, or both, the assessment shall be but one hundred dollars.

Section eight of the act defines the meaning of the phrase "trafficking in intoxicating liquors"—which, so far as the case at bar is concerned, is the buying or procuring and selling of intoxicating liquors; it not being claimed that the transactions mentioned in the petition come within any of the exceptions of said section.

Section two declares that said assessment, together with any increase thereof, as penalty thereon, shall attach and operate as a lien upon the real property on and in which such business is conducted as of the fourth Monday of May, each year.

But under section three when any such business shall be commenced in any year after the fourth Monday of May said assessment shall be proportionate in

amount to the remainder of the assessment year, except it shall in no case be less than twenty-five dollars, and the same shall attach and operate as a lien as aforesaid, at the date of and be paid within ten days after such commencement. By the last clause but one of section five it is provided that if any person, having made return that his business is confined exclusively to malt or vinous liquors, or both, during the assessment year, sell any other intoxicating liquors, the assessment upon his business shall thereby be increased by the sum of two hundred and fifty dollars, and the last clause of section two entitles a party who has been assessed as aforesaid, upon discontinuance of the business during the year, to a refunding order for a proportionate amount of the assessment.

Section five, last clause, imposes a penalty of 20 per cent. upon assessments not paid when due, to be collected therewith.

These are the only provisions involved in the present inquiry, and in none of them is there any exemption, express or implied of the property of the owner, whose tenant violates the conditions of the lease in restraint of the liquor traffic. On the contrary, the express and emphatic provision of section two is, that the assessment "shall attach and operate as a lien upon the real property on and in which such business is conducted." From the imperative language of the whole act it seems clear that the legislative intent was to subject the real estate where the business is carried on to a lien for the assessments imposed upon that business, leaving the owner to protect himself against the hardship, if it be one, by securing tenants who are responsible and law abiding. To hold otherwise would render the law ineffectual. All that would be necessary to secure immunity to the lessor's property would be a covenant against the traffic in the lease, and a plea of ignorance of its violation by the landlord. Thus the very objects of the law would be defeated. We are not to be understood as asserting that real estate upon which a trespasser may enter and carry on the traffic without the knowledge of the owner is made the subject of the lien. Nor would such lien attach to the freehold over which the lessor had no control, during a term granted under a lease ante-dating the passage of the act. McIlvain, J., in State v. Frame, 39 O. S., 399, 413. Although a statute in New York, which authorized the tax collector to seize and sell not only the goods and chattels of the party taxed, but any goods and chattels in his possession, and declared that no claim of property made by any other person, should be available to prevent a sale, was enforced.—Sheldon v. VanBuskirk, 2 N. Y., 473.—And a similar statute in Michigan was upheld in Sears v. Cottrell, 5 Mich., 251. See also 5 Pick., 323; 9 Cush., 52.

But it is a universally recognized principle that laws which exist at the time of making a contract, and in the place where it is made and is to be performed, enter into and make a part of it. Walker v. Whitfield, 16 Wall., 314. In other words, when Simpson executed the lease to Eby, the statute annexed to or incorporated into it, as part of it, that, if said covenant against the liquor traffic should be violated, and the assessment consequent thereon was not paid by the lessee, the demised premises should be bound therefor.

Second—Section five, as we have seen, provides in substance that any person, (having made the return required where he has confined his business, during the assessment year, exclusively to malt or vinous liquor, or both), sells any other intoxicating liquors, the assessment upon his business shall thereby be increased by the sum of two hundred and fifty dollars.

It is suggested that to hold a single sale to be a violation of the section, would lead to absurd results; that a farmer, in his field, who sold a drink to his neighbor, would be a violator of the law. We are not impressed with the pertinence of the illustration. A farmer's business is not usually confined exclusively to malt or vinous liquors, or both; and is not therefore within the section, which, as we have seen, imposes the increased assessment upon the business of the individual who has made a certain return and afterwards sells liquors not contemplated therein.

We think there can be no doubt as to the meaning of the provision quoted.

The language is plain and unequivocal. The increased assessment is in the nature of a punishment—a penalty, if you please—for the fraud perpetrated by the seller in enlarging his business beyond the limits of his return. Its object is to compel a compliance with the law by imposing a heavier burden for its evasion than for its observance.

Third—This assessment, by the terms of the statute, becomes, by the fact of a sale not warranted by the return, a part of the original assessment; and the lien of the additional assessment attaches as of the date of the original. This is clear from section two.

If the liability be incurred by a person who commenced business after the fourth Monday of May, the rule is the same; that is to say, the sum of two hundred and fifty dollars is to be added to the original assessment in either case. If he discontinues business, after he has paid the assessment so increased, or has been charged therewith upon the duplicate, he is entitled to a refunding order upon the basis of the assessment as increased, exclusive, however, of penalties.

The penalty prescribed by the last paragraph of section five applies to the original assessment, if not paid as provided by section two; also to the proportionate assessment under section three, where they are not paid within ten days after the business is commenced.

Where a dealer renders his business liable to the increased assessment under section five, he is to be deemed to have commenced business in spirituous liquors at the date when the increased assessment is placed upon the liquor traffic duplicate, and such increase is due within ten days thereafter; and if not then paid, the penalty attaches.

It was admitted by the demurrer that the auditor placed upon the duplicate as an original assessment the sum of $56.30, of which $6.30 had been paid, leaving a balance due of $50.00. On December 2, 1887, this was increased by the sum of $250.00, making the total assessment $300.00. This not being paid when due, became subject to the penalty of twenty per centum, that is $60.00, making the whole amount, assessments and penalty, $360.00.

The dealer having discontinued business on December 2, 1887, was, and therefore the plaintiff in error was, entitled to a refunder of so much of said sum of $300.00 as the period between December 2, 1887, and the fourth Monday in May, 1888, bears to the period between November 1, 1887, and the fourth Monday of May.

The auditor having refused this, and threatening to enforce the payment of the whole assessment and penalty, the plaintiff was entitled to relief; to an injunction against the collection of more than said $360.00, less the refunder.

The demurrer to the petition was therefore improperly sustained; for which reason the judgment is reversed and the cause remanded, with instructions to the court of common pleas to overrule the demurrer.

Oscar T. Martin, for plaintiff in error.

Walter L. Weaver, prosecuting attorney, *contra.*